IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CIVIL NO. 3:18CV646

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT FOR** |
| ) | **FORFEITURE** *IN REM* |
| APPROXIMATELY $252,140.00 IN US ) | |
| CURRENCY SEIZED FROM DARREN ) | |
| LENNARD COLEMAN ON JUNE 27, 2016 ) | |
| AT CHARLOTTE-DOUGLAS ) | |
| INTERNATIONAL AIRPORT, ) | |
| ) | |
| Defendant. ) | |

NOW COMES the United States of America, Plaintiff herein, by and through R. Andrew Murray, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

**INTRODUCTION**

1. This is a civil action *in rem* against approximately $252,140.00 in United States Currency (also identified herein as "the Currency") seized from Darren Lennard Coleman ("Coleman") as he passed through the Charlotte-Douglas International Airport.

2. This civil action is brought against the Currency because the Currency constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, proceeds traceable to such an exchange, and/or money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841

1

and/or 846, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Moreover, the Currency constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960, or any property traceable to such property, and is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

3. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. §§ 981, 983, and 984, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

4. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355.

5. This Court has venue in this matter pursuant to 28 U.S.C. § 1395.

6. The Currency was seized within and is now within the Western District of North Carolina.

7. Based on the following facts, verified by Department of Homeland Security, Homeland Security Investigations ("HSI") Special Agent William V. Bass, II, this action seeks the forfeiture of all right, title, and interest in the Currency.

**TSA IDENTIFIES CURRENCY IN ATLANTA GA**

8. On June 27, 2018, U.S. Transportation Safety Administration ("TSA") officers in Atlanta, Georgia discovered a large amount of U.S. currency during a screening of Coleman's carry-on bag at the Atlanta-Hartsfield-Jackson International Airport. Coleman informed TSA officers that he had received the currency from a fundraiser in Atlanta, Georgia, held for a non-profit organization that builds homes in Africa. Once TSA screening was complete, Coleman

boarded a flight to the Charlotte-Douglas International Airport, with a final destination to San Francisco, California. TSA in Atlanta contacted law enforcement at the Charlotte-Douglas International Airport about Coleman.

**INITIAL ENCOUNTER BETWEEN LAW ENFORCEMENT AND COLEMAN AT CHARLOTTE-DOUGLAS INTERNATIONAL AIRPORT**

9. On June 27, 2018, based on information obtained from TSA Atlanta, officers from the Charlotte-Mecklenburg Police Department ("CMPD") and HSI Task Force Officers ("TFO") met Coleman at a concourse of the Charlotte-Douglas International Airport as Coleman exited his flight from Atlanta, Georgia. Officers approached Coleman and asked if they could speak with him, indicating that they wished to discuss the large amount of U.S. Currency in his possession.

10. Coleman agreed to speak with the officers and produced a letter for the officers to review. The letter contained a logo for the Office of the International Human Rights Commission ("IHRC") and was signed by R.S. Shumake, ("Shumake"), Ambassador at Large. The letter stated that Coleman was transporting $150,000 to be used in Africa and the Caribbean.

11. According to Coleman, Shumake had hired Coleman to transport the currency from Atlanta to San Francisco, California. Coleman told officers that he had met with Shumake at the Ritz-Carlton Hotel in Atlanta, Georgia, to pick up the currency. He stated that he intended to deliver the currency to a "guy" in San Francisco and that he would only be staying in San Francisco for a few hours before flying back. Coleman was unable to provide officers with the name or phone number of the "guy" he intended to meet in San Francisco and stated that, after he landed in San Francisco, he was supposed to contact Shumake to receive further instructions. Travel

3

records indicated that Coleman would only stay in San Francisco for a matter of hours before returning to Atlanta.

## K9 CIRO ALERTS TO NARCOTICS

12. Upon law enforcement contact with Coleman, a Pineville, North Carolina Police Department ("PPD") canine officer used his canine, Ciro, to conduct a sniff of the outside of each of Coleman's bags, which included the carry-on suitcase and backpack. Ciro alerted to the odor of narcotics on both the carry-on suitcase and the backpack.

## COLEMAN AND SHUMAKE SPEAK WITH LAW ENFORCEMENT AND REVEAL THAT THEY ARE TRANSMITTING MONEY AND ARE NOT A LICENSED MONEY SERVICE BUSINESS

13. Coleman agreed to continue to speak with officers in the Airport Law Enforcement Office (ALEO). While en route to the ALEO, Colman contacted Shumake on Coleman's phone and handed his phone to TFO Brown. TFO Brown spoke with Shumake, who stated that he had given Coleman the Currency in Atlanta and instructed him to transport it on Shumake's behalf to San Francisco. Shumake further stated that he planned to meet Coleman in San Francisco to retrieve the cash. When officers asked Shumake why he would have Coleman transport the cash to San Francisco for Shumake when Shumake was headed from Atlanta to San Francisco himself. Shumake stated that he did not want to fly with a large amount of cash.

14. Coleman admitted that he had previously travelled with cash for Shumake on several occasions to San Francisco and other destinations, transporting between $20,000.00 and $30,000.00 in U.S. Currency each trip. Coleman further admitted that Shumake paid him to transport the money on his behalf.

15. Both Coleman and Shumake informed officers that they were not licensed as a money transmitting service. Investigation subsequent to the seizure detailed below revealed that, according to the State of North Carolina Office of the Commissioner of Banks, neither Shumake nor Coleman have applied or received licenses in the State of North Carolina as money transmitters. Further, Financial Crimes Enforcement Network ("FINCEN") database checks did not reveal any record of registration by Shumake or Coleman as money transmitters.

## OFFICERS SEARCH COLEMAN'S LUGGAGE

16. Once they arrived at the ALEO, Coleman consented to a search of his luggage.

17. Upon opening Coleman's suitcase, officers discovered, among other items, the following:

   a. A small pack with a red plastic bag inside which contained a large amount of U.S. currency. Once the bag was open, an officer detected a strong odor of marijuana from the bag.

   b. A Nike shoe box which held more plastic bags of currency.

The currency seized from the suitcase totaled $250,000.

18. Coleman informed officers that a backpack in his possession also contained approximately $2,000.00 in U.S. currency. When officers searched the backpack they discovered a white money belt at the bottom of the backpack. The money belt contained $2,140 in currency.

19. In total, the currency identified in the suitcase and backpack constitutes the Currency identified for forfeiture herein.

5

20. The Currency in Coleman's possession ranged in denominations of one dollar bills to hundred dollar bills. The Currency was held together with various multi-colored rubber bands. The Currency was packaged in a manner and in denominations consistent with drug trafficking.

## SHUMAKE ADVISES THAT THE CURRENCY IS DERIVED FROM A TWO-PERSON "FUNDRAISER" AND THAT HE IS AN AMBASSADOR ENTITLED TO DIPLOMATIC IMMUNITY

21. Coleman phoned Shumake a second time, and Shumake told officers that the currency had been collected during an IHRC fundraiser he held the day before at the Ritz-Carlton in Atlanta. When officers asked Shumake if the hotel would have a record of the IHRC fundraiser, Shumake stated that the hotel would have a record of him staying there, but that the fundraiser had been held in his hotel room. Shumake further stated that "just two guys" had attended the fundraiser and donated the currency being transported by Coleman.

22. Shumake informed officers that he routinely transported large amounts of U.S. currency overseas for his organization and never reports the currency, since, as an ambassador, he was accorded diplomatic immunity. Shumake told officers that he was a U.S. citizen.

23. Based upon the information which had been developed, HSI seized the Currency on June 27, 2016. Officers conducted a trace detection of the Currency using an Ion Scan 500DT. The Currency, the plastic bags and the interior of the black suitcase all tested positive for cocaine.

## DEPARTMENT OF STATE CONFIRMS THAT SHUMAKE IS NOT AN AMBASSADOR

24. According to the U.S. Department of State ("DOS"), Office of Foreign Missions, in Washington, D.C., as of September, 2015, Shumake, who was at some point before but is no

longer an honorary consul for two different countries, is not a recognized ambassador for any organization and Coleman has never registered with the DOS as a member of a foreign mission.

## OTHER CRIMINAL AND FORFEITURE
## CASES IMPLICATE SHUMAKE IN ILLEGAL ACTIVITY

25. Law enforcement has identified numerous state criminal cases and news stories involving Shumake and/or an apparent alias of Shumake. For example, in 1991, Shumake was charged in Georgia state court with felony counts of financial transaction card theft; in 2016, Shumake was charged in California with felony possession of marijuana for sale and with possession of money over $100,000.00; and, according to news reports and public records on Michigan filings, in 2018, Shumake was charged in Michigan with, among other counts, felony counts of obtaining money under false pretenses.

26. In addition, other federal forfeiture cases throughout the country implicate Shumake. For example, the Department of Homeland Security is currently in receipt of an administrative forfeiture petition from Shumake for $170,130.00 in U.S. currency seized at the Atlanta Hartsfield-Jackson International Airport from a courier hired by Shumake, purportedly to transport currency for the IHRC. Shumake has also filed a claim for currency that is the subject of a civil complaint in the Central District of California (CDCA Case 2:18cv670). The CDCA Complaint was filed against $148,145.00 in U.S. currency seized at the Los Angeles International airport by special agents with the Federal Bureau of Investigation and the Drug Enforcement Administration. That Complaint alleges that the currency seized represents or is traceable to proceeds of illegal narcotics trafficking in violation of 21 U.S.C. § 841. The courier in that case

7

claimed that he was a lawyer representing Shumake who was an IHRC Ambassador to the United States.

## LAW ENFORCEMENT HAS NOT IDENTIFIED LEGITIMATE EMPLOYMENT FOR COLEMAN

27. Law enforcement has not identified any federal information to suggest that Coleman, the apparent courier of the Currency, is legitimately employed.

## LAW ENFORCEMENT HAS IDENTIFIED A BUSINESS DOCUMENT ON INVOLVEMENT OF SHUMAKE IN CONTROLLED SUBSTANCES

28. Law enforcement is, however, in possession of a purported "Letter of Intent" dated June 29, 2018, and signed by Robert Shumake, involving a transaction among the Robert S. Shumake Living Trust and other entities in regard to a multi-million dollar California farm used to cultivate marijuana, a controlled substance.

## ADMINISTRATIVE FORFEITURE

29. Following the seizure at Charlotte-Douglass Airport, Department of Homeland Security, Customs and Border Patrol ("CBP") initiated an administrative forfeiture action against the Currency. Robert Shumake filed a claim for the Currency. The United States files this Complaint in response to the claim.

## CONCLUSION

30. By virtue of the foregoing, all right, title, and interest in the Currency vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States of America.

WHEREFORE, the United States of America respectfully prays the Court that:

(1) a warrant for the arrest of the Defendant be issued;

(2) due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

(3) judgment be entered declaring the defendant to be condemned and forfeited to the United States of America for disposition according to law; and

(4) the United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of defendant property as required by 28 U.S.C. § 1921.

Respectfully submitted this 3rd day of December, 2018.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

**s/ Benjamin Bain-Creed**
Florida Bar # 0021436
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Email: benjamin.bain-creed@usdoj.gov

STATE OF __SC__
COUNTY OF __York__

## VERIFICATION

William V. Bass II deposes and says under penalty of perjury:

I am a Special Agent with the Department of Homeland Security and one of the agents assigned to this case.

I have read the foregoing Complaint and the factual information contained therein is true according to the best of my knowledge, information, and belief.

_____
SA William V. Bass II

STATE OF __SC__
COUNTY OF __York__

I certify that William V. Bass II personally appeared before me this day, acknowledging to me that he signed the foregoing document.

This the __1__ day of December, 2018.

_____
Notary Public
My Commission Expires: __3/8/27__

**SHAKIRA MITCHELL**
Notary Public - State of South Carolina
My Commission Expires March 08, 2027

10