**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL NO. 3;18 CV 646 |
| Plaintiff, | CLAIMANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE CASE OR EXCLUDE EVIDENCE AND TESTIMONY DUE TO THE GOVERNMENT'S SPOLIATION OF EVIDENCE |
| v. | |
| $252,140.00 IN U.S. CURRENCY, | |
| Defendant. | |
| _____/ | |
| INTERNATIONAL HUMAN RIGHTS COMMISSION, ROBERT SHUMAKE, and DARREN LENNARD COLEMAN, | |
| Claimants. | |
| _____/ | |

**1. INTRODUCTION AND STATEMENT OF FACTS**

Undisputedly, and as set out in the government's own pleadings, on June 27, 2016. federal DEA agents seized Claimants' funds from Claimant Coleman.  Complaint for Forfeiture (Doc. 1, filed 12/03/2019, at p 3). On the very next day, June 27, 2016, without consulting any authority or abiding by any rule of law, two Homeland Security Agents, Special Agent Bass and Task Force Officer Brown, took the currency and "direct deposited" it into a US Customs and Border Protection Account with Loomis US Armoured Service. (Department of Homeland Security- Report of Investigations (pp. 11-12) **Exhibit A**.

As will be shown here, these federal agents acted in violation of their own DEA Manual, the Department of Justice Manual and the Code of Federal Regulations, thereby depriving Claimants and their own experts the opportunity to challenge the government's representations of illegality in this case.

1

## II. THE GOVERNMENT'S OWN POLICIES

As set out herein, the government's own policies mandate that, if currency is seized and has any evidentiary value, it must be retained as evidence. This policy is an obvious one since the deprivation of evidence from a defendant or claimant, as here, deprives that party of its own opportunity to examine, test, and introduce his or her own evidence related to that property. This is especially true when the evidence, itself, has value when it is subjected to testing and the opinion of experts. That is the exact situation in this case.

A. **The DEA Manual** – Relevant section of the DEA Agents Manual, Specifically the High Value Property And Seized/Recovered Monies" Section

17. Currency seized for forfeiture **and not retained as evidence** will be transported toa financial institution by a minimum of two armed SAs/TFOs within five business days from the date the currency was acquired by DEA. \

B. **The Department of Justice Asset Forfeture Policy Manual (2019), at 58-59**

C. VI. Seized Cash Management

D. The security, budgetary, and accounting problems caused by retention of large amounts of cash historically has caused great concern within the Department and Congress. In the past, agencies participating in the Department's Asset Forfeiture Program have held tens of thousands of dollars in office safes and other locations throughout the country. This raises both financial management and internal control issues. The Department must report annually to Congress on the amount of seized cash not on deposit.

E. Seized cash, **except where it is to be used as evidence**, is to be deposited promptly in the SADF pending forfeiture. [fn 22 citing 28 C.F.R. § 8.5.] The Chief of MLARS may grant exceptions to this policy in extraordinary circumstances.

F. … Retention of currency will be permitted when it serves a significant independent, tangible, evidentiary purpose due to, for example, the presence of fingerprints, packaging in an incriminating fashion, or the existence of a traceable amount of narcotic residue on the bills. [fn omitted].      (emphasis added).

C. **The Code of Federal Regulations - 28 C.F.R. § 8.5 (2012)**

(a) All property seized for forfeiture by ATF, DEA, or FBI shall be delivered to the custody of the U.S. Marshals Service (USMS), or a custodian approved by the USMS, as soon as practicable after seizure, unless it is retained as evidence by the seizing agency.

2

(b) Seized U.S. currency (and, to the extent practicable, seized foreign currency and negotiable instruments) must be deposited promptly in the Seized Asset Deposit Fund pending forfeiture. Provisional exceptions to this requirement may be granted as follows:

(2) If the seized currency has a value greater than $5,000 and the Chief of the Asset Forfeiture and Money Laundering Section (AFMLS), Criminal Division, determines in writing that the currency is reasonably likely to serve a significant, independent, tangible evidentiary purpose, or that retention is necessary while the potential evidentiary significance of the currency is being determined by scientific testing or otherwise.

(c) **Seized currency has a significant independent, tangible evidentiary purpose** as those terms are used in § 8.5(b)(1) and (b)(2) if, for example, it bears fingerprint evidence, is packaged in an incriminating fashion**, or contains a traceable amount of narcotic residue or some other substance of evidentiary significance**.

### III. THE GOVERNMENT'S THEORY OF THE CASE

The government's own theory, and its basis for seeking forfeiture of the Defendant currency, is its allegation in its Complaint for Forfeiture that those funds were related to drug activities. See,, Complaint for Forfeiture, Doc 1, at 1-2:

> This civil action is brought against the Currency because the Currency constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, proceeds traceable to such an exchange, and/or money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). [1]

To support this theory of forfeiture, the government wishes to offer fact and expert testimony that (1) a trained canine alerted to the odor of drugs on the **currency**, (2) an ION scan detected the presence of cocaine on the **currency**, and (3) the testimony of a supposed expert, Stefan Rose, that, from his experiments, the canine, when exposed to the **currency** "alerted to the

---

[1] Although the government alleges another theory of forfeiture, having to do with a dubious claim related to Money Transfer Agents and reporting requirements pursuant to 18 U.S.C. § 1960, (Doc 1, at 2), that issue is not addressed here and, notably, the government includes no facts in its Complaint for Forfeiture to support that one-line allegation.

3

odor of cocaine, methyl benzoate, and did not alert to the odor of pure cocaine. That experiment initiated a line of research and body of published work in collaboration with Kenneth G. Furton, Ph.D. of the Department of Chemistry at Florida International University, Miami, Florida."

Each of these "contamination" theories proffered by the government is just that – a theory. But, each one of those theories relates back to the Defendant **currency**, itself. Each theory is subject to dispute, and in other federal forfeiture litigations, has, in fact, been disputed. Yet, in order to fully dispute the government's theories of currency contamination as related to drug activities, it is imperative that such currency be available to the Claimants for their own testing and analysis.

Hidden behind the government's proffer regarding its theories of contamination, is, as the government has done in other cases, to offer testimony that, because there was evidence of cocaine on the Defendant currency, then that Defendant currency had, **WITHIN THE LAST FEW HOURS PRIOR TO ITS SEIZURE,** been in contact with the very cocaine that was detected on the Defendant currency. Therefore, the Claimants are drug dealers.

One critical manner in which Claimants can dispute this evidentiary offer by the government, is to test the Defendant currency, itself. Most important, is for Claimants to view and test the Defendant currency even years after its seizure to determine if the presence of cocaine still exists on or in that currency, either by laboratory testing or any other testing method, including a canine alert to that currency.

Based on other expert studies that (1) most currency in general circulation is contaminated with illicit drugs, (2) that cocaine can remain on currency for indefinite times, and (3) that so long as currency contains cocaine residue, it will continue to emit methyl benzoate, there exists no basis for this Court or any jury to conclude that currency contamination means that Claimants were involved in any criminal activities related to drugs.

First, is the issue of contamination of currency in general circulation. See, the Minnesota Supreme Court decision in *Jacobson v. $55,900 in United States Currency* (2007) 728 N.W. 2d

4

510, 526-527,.

Despite the relatively low threshold that relevancy presents, some courts have concluded that dog sniff evidence is so lacking in probative value that it is "virtually meaningless" on the question of whether cash is connected to drug trafficking. *Muhammed v. Drug Enforcement Agency*, 92 F.3d 648, 653 (8th Cir. 1996). Much of the criticism of dog sniff evidence has centered on the "currency contamination" theory, which essentially holds that **most cash in general circulation--as much as 97 percent in some studies--is contaminated with trace amounts of cocaine**. *See United States v. Carr*, 25 F.3d 1194, 1215 n.6 (3d Cir. 1994) (Becker, J., concurring in part and dissenting in part); *see also United States v. Funds in the Amount of $ 30,670*, 403 F.3d 448, 455-56 (7th Cir. 2005) (**discussing studies that indicate a 70 to 90 percent currency contamination rate**). Courts rejecting dog sniff evidence on the basis of the currency contamination theory conclude that **as a result of widespread currency contamination, it is "almost certain" that every American carries "drug-tainted" money**. *Carr*, 25 F.3d at 1215 n.6 (Becker, J., dissenting) (citing Mark Curriden, *Courts Reject Drug-Tainted Evidence*, 79 A.B.A.J. 22 (Aug. 1993) (emphases added)

Despite this evidence of innocent contamination of most currency in circulation, which really is undisputed throughout the legal community, the government will try to circumvent it with Dr. Stephen Rose's opinion that a canine only alerts to methyl benzoate, which is emitted by cocaine on currency and that METHYL BENZOATE DISSAPATES WITHIN A FEW HOURS. Therefore, according to the government's planned testimony from Dr. Rose, if a canine alerted to the currency in this case, then that currency was RECENTLY in contact with cocaine, thereby incriminating Claimants as being drug dealers.

This theory, absurd on its face, has been seriously challenged by a publication in the Journal of Forensic Science in 2016 by Dr. Jay Poupko (**Exhibit B**) as well as a subsequent opinion by Dr. Poupko in another case in this Circuit before the Honorable Louise Flanagan, *United States v. $307,970.00 in U.S. Currency*, Case No. 12-cv-136 (ED North Carolina, Eastern Division).**Exhibit C**.

Yet, for Claimants here to dispute the government's theory in this case, it would be imperative for Claimants to actually possess and test the seized currency in order to factually and

5

experimentally prove that there is no scientific evidence that the currency in this case was IN RECENT CONTACT with cocaine or any other drug but that, even if there is any contamination of the currency, that contamination still exists and it is no different than the contamination of currency in general circulation throughout this country. See *Jacobson v. $55,900 in United States Currency, infra.*

In other words, if Claimants' tests of the currency would have shown that the currency, even after all this time, is still contaminated with cocaine (like most all currency in general circulation) and is still emitting methyl benzoate, then Dr. Rose's theory of recent contamination is rendered absurd and no jury would find in the government's favor in this case based on its theory of currency contamination. The destruction of that currency by government agents, acting in complete dereliction of their trained duties to preserve, has deprived Claimants of that opportunity.

## IV. BECAUSE THE DESTRUCTION OF THE CURRENCY WAS DELIBERATE AND WILLFUL, THIS CASE MUST BE DISMISSED BY THE COURT

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." 2 *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" Id. (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

"[S]poliation does not result merely from the 'negligent loss or destruction of evidence.'" *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). "Rather, the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged

6

in conduct resulting in the evidence's loss or destruction." *Turner*, 736 F.3d at 282; *Vulcan Materials Co. v. Massiah*, 645 F.3d 249, 259–60 (4th Cir. 2011); *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004). Although the conduct must be intentional, the party seeking sanctions need not prove bad faith." *Turner*, 736 F.3d at 282 (citing *Vodusek*, 71 F.3d at 156); see *Cole v. Keller Indus., Inc.*, 132 F.3d 1044, 1046–47 (4th Cir. 1998).

The government's deposit of the currency in this case was plainly intentional and the government should have known – and likely did know and acted deliberately - that the currency was not just potentially relevant to the issues in this case, but actually and obviously relevant. The DEA Manual, says exactly that at 17: "currency retained as evidence" is not to be deposited in a financial institution. The Department of Justice Asset Forfeiture Policy Manual (2019), at 58-59 says the same thing: "Seized cash, except where it is to be used as evidence, is to be deposited…" The Code of Federal Regulations - 28 C.F.R. § 8.5 (2012) also says the same thing. "Seized currency which has a significant independent, tangible evidentiary purpose, such as containing a traceable amount of narcotic residue or some other substance of evidentiary significance", should not be deposited in a financial institution.

Homeland Security Agents, Special Agent Bass and Task Force Officer Brown, are trained federal law enforcement agents and officers. This is obviously not their first rodeo with seized currency. It is unimaginable that they would not be aware of the exact rules related to the seizure of currency as evidence. This Court can only presume that these agents deliberately ignored the DEA Manual, the DOJ Asset Forfeiture Policy Manual and Section 28 C.F.R. § 8.5 of the Code of Federal Regulations and consciously and deliberately made sure that the seized currency could not be examined by Claimants and their own investigators and experts.

This Court can only conclude that, under the circumstances in this case, "the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction." Furthermore, because the conduct of the agents was intentional, Claimants, here, need not show

7

bad faith. *Turner, Vodusek,* and *Cole.*

## V. CONCLUSION

Because the seized currency is now unavailable to Claimants, it is impossible for Claimants to present their own evidence regarding currency contamination to this Court or a jury. In effect, the government, in depositing the currency, has effectively destroyed the currency and denied Claimants the opportunity to examine and test it.

Under the facts of this case, and as set forth herein, the destruction of the currency by the government can only be construed as willful. If this Court concurs that the spoliation was willful, then it is appropriate to dismiss this case. "A party's destruction of evidence qualifies as **willful spoliation** if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (citing *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (emphasis added). "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in **pending or reasonably foreseeable litigation**." *Blue Sky Travel & Tours, LLC v. Al Tayyar*, 606 F. App'x 689, 696 n.10 (4th Cir. 2015) (citing *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir. 2001)(emphasis added). "A party may be sanctioned for spoliation if the party (1) had a duty to preserve material evidence, and (2) **willfully** engaged in conduct resulting in the loss or destruction of that evidence, (3) at a time when the party knew, or should have known, that the evidence was or could be relevant in litigation." *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) (emphasis added).

Claimants INTERNATIONAL HUMAN RIGHTS COMMISSION, ROBERT SHUMAKE, and DARREN LENNARD COLEMAN, hereby move this Court to dismiss this

8

case due to the Government's Spoliation of Evidence in violation the Government's own Drug Enforcement Manual, the Department of Justice Manual and the Code of Federal Regulations.[2]

Dated: September 28, 2020

>Respectfully submitted,
>
>*S/David M. Michael*
>DAVID M. MICHAEL, CSBN 74031
>LAW OFFICES OF MICHAEL & BURCH LLP
>One Sansome Street, Suite 3500
>San Francisco, CA 94104
>david@michaelburchlaw.com
>
>Attorney for Claimants INTERNATIONAL HUMAN RIGHTS COMMISSION, ROBERT SHUMAKE AND DARREN COLEMAN

---

[2] This Court could also conclude that, in the remote possibility that the agents conduct was not willful, an appropriate spoliation sanction must be that any evidence related to the currency and its contamination must be barred from these proceedings. Such exclusion must include any testimony related to alleged contamination of the seized currency, including the canine handler in this case, the results of any ION scan, and the opinion of the government's identified expert Stefan Rose.

9

**CERTIFICATE OF ELECTRONIC SERVICE**

The undersigned hereby certifies that, on September 28, 2020, he caused to be electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>S/David M. Michael</u>
DAVID M. MICHAEL