IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>APPROXIMATELY $252,140.00 IN US )<br>CURRENCY SEIZED FROM DARREN )<br>LENNARD COLEMAN ON JUNE 27, 2016 )<br>AT CHARLOTTE-DOUGLAS )<br>INTERNATIONAL AIRPORT. )<br>_____)<br>CLAIMS OF ROBERT SHUMAKE AND )<br>INTERNATIONAL HUMAN RIGHTS )<br>COMMISSION ) | CIVIL NO. 3:18cv646<br><br>**MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT** |

**OVERVIEW**

This case arises out of a June 27, 2016 seizure by Homeland Security Investigations ("HSI") of $252,140 ("the Currency") in drug money from Darren Coleman as he passed through the Charlotte-Douglas International Airport *en route* to California. Claimants contend that the seized Currency in this case constitutes charitable donations to IHRC, an "International Government Organization" akin to the United Nations, of which Claimant Robert Shumake is the "World Chairman," and that during the Currency's transportation Coleman was entitled to diplomatic immunity under a "Vienna Convention" treaty.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, Claimants' contentions regarding IHRC and purported legitimate sources of the Currency are demonstrably false. Conversely, the Government's evidence establishing the requisite forfeiture nexus to Shumake's admitted federal drug crime is unrebutted.

1

The Department of State ("DOS") has confirmed that neither IHRC, Shumake, nor Coleman are entitled to immunity. The United States is not even a signatory to the Vienna Convention treaty that Claimants cite as the grounds for their purported immunity. No credible evidence exists that Shumake or Coleman were/are affiliated with IHRC—other than using that organization's letterhead name as attempted cover to move money—the DOS has no records of such association, and IHRC's website publicly disclaims affiliation with Shumake (who purports to be IHRC's World Chairman, but when deposed could not answer basic questions regarding the organization).

IHRC has only appeared in this litigation through Shumake, which is a fraud on the Court, as the evidence shows Shumake has no actual authority to represent the organization. His assertion that the Currency constituted charitable donations for IRHC warrants as little credit as his fraudulent claims of immunity. Tellingly, Shumake attempted to have the "charitable donations" satisfy his personal tax liability with the IRS—a liability which derives from his recreational marijuana business.

On the other hand, ample uncontested evidence supports a nexus between the Currency and crime. A properly trained K9 alerted to luggage carrying the Currency, while an ion scan detected cocaine on the Currency. Further, Shumake provides little explanation regarding how he raised the Currency, identifying the sources as a combination of (1) "two guys," affiliated with rapper "Young Thug," who gave Shumake/Coleman a bag of cash in hotel room and (2) John Goldstein, who is engaged with Shumake in a cash-intensive California recreational marijuana business *that Shumake knows is unbankable and illegal*.

## FACTUAL BACKGROUND

The facts supporting forfeiture are generally set forth in the Government's verified Complaint, which the Court may rely on for summary judgment, *see United States v. Parcels of Property Located at 14 Leon Drive*, 2006 WL 2239231, *3 (M.D. Ala. 2006). Each is specifically discussed as applicable below.

## LEGAL FRAMEWORK FOR CIVIL FORFEITURE

The statutory bases supporting forfeiture are 21 U.S.C. § 881(a)(6) (forfeiture of property used or intended to be used to facilitate Title 21 violations and proceeds of said violations) and 18 U.S.C. § 981(a)(1)(A) (forfeiture of property involved in unlicensed money service business).

The Government bears the initial burden of establishing forfeitability by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). To satisfy its burden, the Government must establish a nexus between property and crime. In the case of "proceeds," there is a nexus if property would not have been received "but for" the crime. *See United States v. Farkas*, 474 Fed. Appx. 349, 359-60 (4th Cir. 2012). As to property involved in or that facilitates crime, forfeiture is appropriate upon a finding of a nexus in the form of a substantial connection between the property and crime. *See United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010) (noting similarity between civil and criminal forfeiture laws).

"The government may rely on circumstantial evidence to establish forfeitability." *Id.*; *see also United States v. $94,200 in U.S. Currency*, 2012 WL 2885129, at *5 (M.D.N.C. July 13, 2012). "Moreover, [p]roceeds need not be tied to any particular identifiable drug transaction." *United States v. $240,100 in U.S. Currency*, 2017 WL 2303985, at *6 (M.D.N.C. May 25, 2017) (internal quotation omitted). "Under the substantial connection test, ... [a]t minimum, the property must have more than an incidental or fortuitous connection to criminal activity," but need not be

3

"integral, essential or indispensable" to that activity. *United States v. Schifferli*, 895 F.2d 987, 990 (4th Cir. 1990).

If the Government meets its burden, the burden shifts to the claimant to show by a preponderance of the evidence that he or she is an "innocent owner" of the property. Section 983(d)(2) provides that "innocent owner" "means an owner who (i) did not know of the conduct giving rise to forfeiture; or (ii) Upon learning of the conduct . . . did all that reasonably could be expected under the circumstances to terminate such use of the property."

## ARGUMENT AND AUTHORITIES

### I. The evidence and Claimants' admissions show that only IHRC has standing.

"A plaintiff's standing to sue in federal court is "an integral component of the case or controversy requirement" of Article III of the United States Constitution. *Miller v. Brown,* 462 F.3d 312, 316 (4th Cir. 2006). In civil forfeiture cases:

> A forfeiture claimant must have Article III standing to challenge a forfeiture. Such standing arises from either an ownership interest, a possessory interest, or a security interest in the specific property that is the subject of the forfeiture action. Standing is a question of law for the court to decide; it is not a question of fact for the jury. Further, a forfeiture claimant has the burden to establish standing by a preponderance of the evidence." One asserting an ownership interest in the seized property must support that claim with evidence beyond a bare assertion of ownership. "Ownership" may be established by proof of actual possession, control, title, and financial stake.

*U.S. v. $122,640.00 in U.S. Currency*, 81 F. Supp. 3d 482, 484–85 (D. Md. 2015) (internal citations omitted) (granting summary judgment when claimant's "version of events is utterly discredited by the evidence").

In this case, the Claimants make the Court's standing analysis straightforward: all three of the original Claimants—Coleman, Shumake, and IHRC—unequivocally assert the Currency belongs to IHRC, each stating: "[t]he $252,140.00 US currency belongs to the IHRC Humanitarian

Mission." Doc. 11, p.7, ¶5; Doc. 12, p.8, ¶5; Doc. 13, p.7, ¶5. Thus, by their own admission, only Claimant IHRC has standing. *See United States v. $240,100*, 2017 WL 2303985, at *5 (M.D.N.C. May 25, 2017) (where claimant concedes property is owned by someone else, Government is entitled to summary judgment.).[1]

Moreover, the evidence demonstrates that Shumake, who was not present at the seizure, cannot assert a claim of ownership outside of IHRC's purported interest. First, while he claims to be the organization's "Ambassador" and/or "World Chairman," even if true, this does not give him independent standing. *See U.S. v. Real Prop. Associated with First Beneficial Mortg. Corp.*, 2009 WL 1035233, at *3 (W.D.N.C. Apr. 16, 2009) (shareholder does not have standing) (listing authorities); *U.S. v. $98,699.60 in U.S. Currency*, 2017 WL 750701, at *21 (E.D.N.C. Feb. 23, 2017) (same). Next, Shumake's discovery responses and deposition testimony confirm that his only alleged connection to the Currency is through IHRC. Ex.6, ROG response 1; Ex.3, 80:16-84:5.

Thus, only the bald assertion of ownership Shumake makes in his verified claim supports his standing in this case. This is insufficient as a matter of law at the summary judgment stage, and the Court should dismiss Shumake's Claim for lack of standing. *See U.S. v. $447,815.00 in U.S. Currency*, 2011 WL 4083640, at *3 (M.D.N.C. July 26, 2011), *aff'd sub nom* 470 Fed. Appx. 192 (4th Cir. 2012) (unpublished).

**II.   IHRC, acting solely through Shumake, has committed fraud on the Court and its Claim should be dismissed.**

Shumake signed IHRC's Claim (Doc. 9) and Shumake, who holds himself out to be IHRC's "World Chairman," was designated as IHRC's Rule 30(b)(6) witness and verified IHRC's

---

[1] Coleman, who had a possessory interest in the Currency at the time of seizure, withdrew his claim rather than sit for his deposition. Doc. 37; Ex.1.

interrogatory responses. Ex.6. The evidence, however, establishes that Shumake has no legitimate connection to the real IHRC organization—which seemingly is a NGO headquartered in Prague— and that the appearance of IHRC in this litigation is a fraud on the Court.

"By now it is well-settled that fraud on the court or abuse of the judicial process warrants use of the inherent power to impose sanctions on the offending party or its counsel, or both." *Suntrust Mortg., Inc. v. AIG United Guar. Corp.*, 2011 WL 1225989, at *13 (E.D. Va. Mar. 29, 2011), *aff'd sub nom* 508 Fed. Appx. 243 (4th Cir. 2013) (unpublished). "The Fourth Circuit's decision in *Shaffer,* leaves no doubt that the Court may order dismissal as one of its inherent powers." *Id.* at *26; *see also Stonecreek - AAA, LLC v. Wells Fargo Bank N.A.*, 2014 WL 12514900, at *1 (S.D. Fla. May 13, 2014) ("Acts which degrade the judicial system, including attempts to deprive the Court of jurisdiction, *fraud*, misleading and lying to the Court, however, are sanctioned through the court's inherent power.") (internal alternations and quotations omitted, emphasis in original).

"A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989). "Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms." *Id.* at 1117.

Shumake's filing of a claim on behalf of IHRC under penalty of perjury and then falsely holding himself out to be its designated representative in order to advance a theory of the case that the Currency was charitable donations is a fraud on the Court. The clear and convincing evidence that Shumake did so is set forth below.

### A. *IHRC publicly disclaims any affiliation with Shumake.*

IHRC appears to be an operating non-governmental organization ("NGO") independent of Shumake. Claimants' Answers in this case state the website address for IHRC is at the URL, http://www.ihrchq.org,[2] and assert the official IHRC website lists Shumake as the "Diplomatic Ambassador of the IHRC to the United States of America." Doc. 13, p.8. IHRC's official website, however, publicly disclaims any affiliation with Shumake and <u>states that he has never received authorization from the organization to represent IHRC</u>:




*See* https://www.ihrchq.org/robert-shumake.html; Ex.4).

Shumake's explanation for this is both incredible and implausible. He asserts that a "clandestine organization" took the website as their own by hacking it and then appointed new "ambassadors" and began raising funds for their own benefit. Ex.3, 17:11-20; 18:21-19:6; 20:16-20. Shumake further claims that he has control over IHRC's logo, control over this website, and has gotten the website shut down:

> Q. So it's your testimony that you, Robert Shumake, have the legal right to the three domain names for the websites we've been discussing?
> A. Correct, I do.
> Q. What about the trademark for IHRC's logo, who controls that right now?

---

[2] In his deposition, Shumake claimed IHRC had three official websites: (1) www.ihrchq.org, (2) www.ihrc-hq.org, and (3) www.ihrcheadquarters.org. Ex.3, ____. Shumake claims the ihrc-hq website was set up by a "group out of New York." Ex.3, 30:4-7. None of the websites list any affiliation with Shumake other than to disclaim him.

> A. The world chairman.
> Q. And is that yourself, Robert Shumake?
> A. Yes.
>  . . .
>
> Q. So you got the www.ihrchq.org website shut down?
> A. Yes.
> Q. How did you do that?
> A. My lawyer submitted the court order to the host of that website.
> Q. You asked your lawyer to submit the court order to the company that hosted the www.ihrchq.org website and your testimony is that company took down the website?
> A. Right.

Ex.3, 30:11-32:15. This is a blatant falsehood the veracity of which is easily checked—IHRC clearly has a functioning website, disclaiming any affiliation with Shumake, that the Court can access to-date by simply clicking the above link. *See also* Ex.4. In short, Shumake's account that IRHC was wrested from him by a "clandestine organization"—which oddly enough openly operates a seemingly legitimate organization—is easily disproven.

A simpler explanation exists: Shumake, a convicted fraudster (Ex.2, 90:2-92:9; Ex.8), faked affiliation with IHRC and appropriated its logo on documents to make himself appear to be a diplomat at the time of seizure and give the pretense of legitimate cover for the drug money he was moving around the United States—as evidenced by the "diplomatic immunity" letters he has given to his hired couriers in this case and others. Ex.5.

> **B.** *Shumake falsely claims IHRC and its representatives are entitled to privileges and immunities in the United States.*

Shumake contends that the "International Human Rights Commission, it's an intergovernmental organization . . . It's an IGO just like the United Nations, so it's got its own Vienna Convention, it's got its own diplomatic resources and powers." Ex.3, 70:2-8. Claimants further assert in their Answers that Shumake is an "Ambassador of the IHRC to the United States"; that a diplomatic courier letter that Shumake provided to Coleman rendered Coleman free from interference; and that "the *Vienna Convention on the Representation of States in their Relations*

8

*with International Organizations of a Universal Character 14 March 1975*, Articles 23 through 30" effectively rendered the Currency immune from seizure. Doc. 13, pp.7-10.

This is, on its face, nonsense. First, the DOS has confirmed that it has no record of IHRC and the organization does not enjoy any privileges and immunities in the United States, including with respect to its property and assets, either now or at the time of seizure.[3] Ex.7 Likewise, DOS does not have any record of Shumake or Coleman being associated with IHRC, and confirms that neither enjoyed any privileges or immunities in the United States at the time or seizure or presently. *Id*. at ¶¶ 3-4.

Importantly, the Fourth Circuit has held that the DOS's certification that an individual was not entitled to diplomatic immunity is "conclusive evidence" of a lack of entitlement. *United States v. Al–Hamdi,* 356 F.3d 564, 572–73 (4th Cir. 2004); *see also Muthana v. Pompeo*, 19-5362, 2021 WL 162027, at *9 (D.C. Cir. Jan. 19, 2021).

Next, even if IHRC was a recognized international organization, the "*Vienna Convention . . . with International Organizations . . .*" to which Shumake cites as a purported bases for his IHRC immunity is not a treaty to which the United States is even a signatory country and is not in force.[4] Rather, in the U.S., the International Organization Immunities Act ("IOIA"), 59 Stat. 669, 22 U.S.C. §§ 288 *et seq*., confers immunity on designated international organizations, granting them the same immunity from suit as is enjoyed by foreign governments. *See Jam v. Intl. Fin. Corp.*, 139 S. Ct. 759, 762–65 (2019). "To receive such designation, an organization must be recognized through an 'appropriate Executive Order as being entitled to enjoy the privileges, exemptions, and immunities' provided by the IOIA." *Oss Nokalva, Inc. v. European Space Agency*, CIV. A. 08-

---

[3] This is not to say that the IHRC based in Prague is not a real NGO. It simply is not an organization that DOS recognizes as entitled to immunities in the United States.
[4] *See* https://treaties.un.org/Pages/ViewDetails.aspx?src=TREATY&mtdsg_no=III-11&chapter=3&clang=_en

9

3169 MLC, 2009 WL 2424702, at *3 (D.N.J. Aug. 6, 2009) (quoting 22 U.S.C. § 288). IHRC is not one of the designated international organizations pursuant to the IOIA. *See* 22 U.S.C. § 288 Notes (listing designated organizations).

Thus, the fact that Shumake brazenly claims immunity for IHRC and himself, despite the fact that such immunity does not exist, also indicates that he is not, in fact, the "World Chairman" or designated representative of IHRC or any legitimate international organization.

### C. *Shumake does not understand the basic nature of IHRC or know basic facts about it that an actual representative of the organization would know.*

Shumake was designated as IHRC's corporate representative in its Rule 30(b)(6) deposition. He did nothing to prepare for his testimony and was unfamiliar with basic concepts or facts about the organization—*i.e.* the type of concepts the actual World Chairman or representative of an international organization would understand. Ex.3, 5:10-9:2. Most notably, as discussed above, Shumake claims that IHRC is an IGO akin to the United Nations. But an IGO is an organization comprised of either sovereign states or other IGOs.[5] Further, Shumake does not know when IHRC was founded, who founded IHRC, how long IHRC has existed, or how much money IHRC has raised in any year since 2015, and he cannot name any IHRC offices, employees, or "ambassadors."[6] Ex.3, 12:8-13:19; 16:6-13; 17:1-3; 21:22-22:2; 44:19-20; 86:2-4.

Moreover, Shumake's lack of basic knowledge about IHRC as its purported representative is contradicted by the organization's public facing web pages, which detail members, physical office locations with given addresses, email addresses for members at the ihrchq.org domain name,

---

[5] Shumake would not be the first fraudster to use a NGO and fake documents to falsely claim association with the United Nations. *See U.S. v. Jones*, 965 F.3d 190, 192 (2d Cir. 2020).

[6] Rather, Shumake essentially contends that he is the entire organization: that he has been the "world chairman" since the prior world chairman was sentenced to prison in Pakistan, has "done zero activities" as World Chairman, that he has "dismantled the entire board" of IHRC, and that there is not currently an IHRC vice-chairman, deputy chairman, or secretary general, and Shumake is unaware of the number of members of IHRC. Ex.3, 16:6-13, 44:19-20, 86:2-4. Also, according to Shumake, there is not a current IHRC headquarters office, other than through a general counsel in Pakistan. Ex.3, 21:22-22:2. *But cf.* https://www.ihrchq.org/ihrc-hq.html and https://www.ihrc-hq.org/about#profiles

links for electronic donations, and descriptions of the organization's ongoing operations. *See, e.g.*, https://www.ihrchq.org/prague.html. The only reasonable conclusion to be drawn is that Shumake is not, in fact, an actual representative for IHRC.

### D. *Shumake attempted to use the seized Currency to pay his own personal tax liability*.

Shumake attempted in this case to use the seized Currency—which he claims is comprised of charitable donations—to satisfy his own personal real estate and marijuana revenue tax liability to the IRS. Ex.9; Ex. 2, 22:4-6. No legitimate organization would use charitable donations to satisfy an individual's personal tax liability—this would be criminal fraud. Thus, the implications of Shumake attempting to do so as IHRC's purported representative are simple: the Currency was not in fact charitable donations to a legitimate organization, and the representations made to the Court that it was and that Shumake had the authority to claim the Currency on behalf of IHRC, are false.

### E. *Shumake's fraud on the Court pervades the entire case and warrants dismissal.*

Shumake's fraud on the Court—that he is legitimately associated with and has the authority to represent IHRC—forms the sole basis of his claim to the Currency in this case. It is also the sole reason "IHRC" has appeared in this litigation. There can be no doubt that such representations were intentional, and in such cases, dismissal is appropriate. *See Aoude,* 892 F.2d at 1115 (affirming dismissal where the plaintiff forged a purchase agreement "that formed the complaint's centerpiece."); *Greenburg v. Roberts Properties, Ltd.*, 2006 WL 7345628, at *7 (D. Ariz. Feb. 21, 2006), *aff'd*, 246 Fed. Appx. 500 (9th Cir. 2007) (unpublished) (refusing to allow a case to proceed when doing so would condone plaintiff's lies); *Yanez v. Am. W. Airlines, Inc.*, 2004 WL 2434725,

at *7 (D. Md. Oct. 13, 2004) (dismissal proper where individual had provided false deposition testimony and failed to meet discovery obligations in order to perpetuate fraudulent scheme).[7]

## III. The summary judgment evidence establishes the requisite forfeiture nexus to a Title 21 offense.

The evidence also supports summary judgment on the forfeiture nexus. A court considering summary judgment on nexus should review "the totality of the circumstances as a whole and in the appropriate context." *United States v. $147,900*, 450 Fed. App. 261, 263 (4th Cir. 2011) (per curiam). A court considering whether property is subject to forfeiture based on the nexus of the property to a Title 21 offense need not link the property to a particular drug transaction. *United States v. $63,788*, 2018 WL 1629114, at *5 (S.D. Ala. April 3, 2018); *United States v. $100,000*, 305 F. Supp. 3d 238, 246 (D. Mass. 2018) (listing authorities). Instead, courts review a variety of factors to decide nexus. *See, e.g., $100,000*, 305 F. Supp. 3d at 246. The following factors in this case, that are not subject to genuine dispute, reflect that there is a nexus here for purposes of Section 881(a)(6).

### A. *The large amount of currency.*

First, the fact that Coleman was carrying an unusually large amount of Currency—$252,140 to be exact—supports a nexus finding. While not dispositive, possession of "'large sums of cash' can be 'strong evidence' that the cash is related to drug activity." *United States v. $200,000*, 210 F. Supp. 3d 788, 795 (M.D.N.C. 2016); *United States v. $30,670*, 403 F.3d 448, 468 (7th Cir. 2005); *United States v. $174,206*, 320 F.3d 658, 662 (6th Cir. 2003); *$63,788*, 2018 WL 1629114, at *6; *$100,000*, 305 F. Supp. 3d at 248. Indeed, "[a] common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded

---

[7] Although the Government firmly believes that summary judgment is appropriate, at the very least the Court should investigate Shumake's fraud. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("A court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud.").

into bundles and stuffed into packages . . . " *United States v. $242,484*, 389 F.3d 149, 1161 (11th Cir. 2004).

**B.**   *The Currency was packaged in a manner indicative of drug trafficking.*

The Currency here was packaged in plastic bags and a shoe box in luggage, and in a money belt in a backpack:



*See* Ex.17;  Doc. 1, ¶¶ 17-1.  And, according to Shumake, it was not uncommon for "IHRC" to keep money in "book bags." Ex.3, 53:23-24. As numerous courts have recognized, individuals moving money involved in narcotics often package the money in plastic so as to "hamper canine detection" and/or package currency in bundles and backpacks. *See $63,788*, 2018 WL 1629114 at *6 (vacuum-sealed bundles); *$200,000*, 210 F. Supp. 3d at 796 (same); *see also $242,484*, 389 F.3d at 1161 (rubber-banded bundles stuffed into packages in a backpack); *$100,000*, 305 F. Supp.

3d at 246 (noting that claimant had not offered an innocent reason for packaging currency bundles as if they were books); *United States v. $117,920*, 413 F.3d 826, 829 (8th Cir. 2005) (affirming judgment at trial when money packaged in rubber bands in plastic sack in clothing in duffle bag). Thus, this factor supports summary judgment.

    **C.**    *Coleman was transporting the Currency to a source-location for narcotics.*

Coleman was transporting the Currency from Atlanta to San Francisco, (Doc. 1, ¶8), and this factor supports summary judgment because Northern California is "well-known for its source of marijuana supply." *$100,000*, 305 F. Supp. 3d at 247. And, not only is California generally a drug-source location, but Shumake specifically admits to owning a recreational marijuana farm there in violation of federal law. Ex.2, 46:5-9, 37:9-38:4.

    **D.**    *An officer detected the odor of marijuana.*

During the search, an officer detected the odor of marijuana emanating from a red plastic bag that held some of the Currency, Doc. 1, ¶17a, further indicative of a nexus. *See, e.g., $117,920*, 413 F.3d at 829; *$200,000*, 210 F. Supp. 3d at 795.

    **E.**    *A properly trained and certified K9 alerted to the luggage.*

K9 Ciro alerted to the odor of narcotics on/from Coleman's suitcase and backpack. Doc. 1, ¶12. As Government's expert Dr. Stefan Rose has opined, K9 Ciro was properly trained and does not have a history of providing false positive alerts. Ex.10, p.3; Ex.11, 13:20-25; 15:1-4; 18:5-25; 21:11-19; 22:6-13. This conclusion is unrebutted by Claimants' expert, Ex.12; Ex.13, 20:21-21:9.

As numerous courts have recognized, including courts that favorably cite Dr. Rose's research and qualifications, "a properly trained dog's alert [ . . . ] should be entitled to probative weight" and is "entitled to a presumption of reliability." *Florida v. Harris*, 568 U.S. 237, 133 S. Ct. 1050, 1057 (2013); *$30,670*, 403 F.3d at 459 (providing overview of the research of Dr. Rose

and Dr. Kenneth Furton, and analysis of the debunked "currency contamination" theory); *$200,000*, 210 F. Supp. 3d at 795 (on presumption of reliability); *see also $100,000*, 305 F. Supp. 3d at 248-249 (discussing significance of dog's performance in training); *cf. United States v. $864,400 in U.S. Currency*, 405 F. App'x. 717, 718-19 (4th Cir. 2010) (per curiam) (noting significance of K9 alerts to empty compartments in car).

Thus, K9 Ciro's alert for narcotics on/from the luggage Coleman was transporting the Currency in is probative of a nexus to drug trafficking.

### F. *Ion scans confirmed high levels of cocaine on the Currency and its packaging.*

After seizure, law enforcement conducted trace detection testing for narcotics utilizing an Ion Scan which detected high levels of cocaine on the items seized from Coleman, including the Currency and its packaging. (Doc. 1, ¶ 23); Ex.14; Ex.18. Specifically, samples were taken and analysis performed on two bundles of currency, the interior of the Nike sneaker box, the interior of the roller bag, and four out of the six plastic bags containing the Currency. *Id*. The Currency, shoe box, and plastic bags all tested positive for cocaine, while the interior of the roller bag tested negative. *Id*. Ex.14, Pages 6-7; *see also* Ex.15, 50:6-13.

Courts rely upon ion scan results—particularly when properly explained by an expert—as a tool to confirm the presence of illegal narcotics in both criminal cases and civil forfeiture cases. *See United States v. Hairston*, 409 Fed. Appx. 668, 670-671 (4th Cir. 2011) (court properly denied motion in limine wherein defendant sought to exclude ion scan results and expert testimony); *United States v. $328,910*, 2020 WL 1931297, at *14 (E.D. Ark. Apr. 21, 2020) (relying on ion scan in civil forfeiture case)(*citing*, *inter alia*, *United States. v. Alvarez-Manza*, 570 F.3d 1070, 1073 (8th Cir. 2009)).

15

The evidence that the officers properly operated the ion scanner here is unrebutted—indeed, Claimant's own expert, while he disputes the significance of ion scans (contrary to the above case-law), agrees that law enforcement properly operated the ion scanner, and the scanner properly produced positive results. Ex.13, 48:18-49:16, 55:23-56:16. So too concludes the Government's expert. Ex. 14. Thus, this factor supports a nexus finding.

### G. *The Claimant's story as to the legitimate source of the Currency is unsubstantiated and implausible.*

"The mere allegation of a highly unlikely source of income without some support to give the allegation credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture." *United States v. Two Parcels of Real Property Located in Russell County*, 92 F.3d 1123, 1129 (11th Cir. 1996); *United States v. $864,400.00*, 405 F. App'x 717, 719 (4th Cir. 2010) ("Tan argues that he has rebutted the Government's claims and presented sufficient evidence of his innocent intentions to create a dispute over a material fact and defeat summary judgment. We do not agree. After reviewing Tan's claims, we conclude (as did the district court) that they are incredible, and lack any basis in evidence, other than Tan's own self-serving declarations. In short, his claims do not give rise to a dispute over a material fact.").

Here, the claims to the Currency are incredible and, instead of defeating summary judgment, *support* summary judgment. As discussed above, Shumake has no legitimate connection to IHRC. His story as to the Currency's origin is that it comes from two separate sources: (1) a rapper known as "Young Thug" (of the YSL or "Young Stoner Life" group), who purportedly raised roughly $100,000 of the Currency via fundraisers (that Shumake did not attend and the details of which he could not provide), Ex.2, 52-54, and (2) John Goldstein, who owns bingo parlors and is involved in a cannabis business with Shumake and who purportedly raised the rest. *Id.* at 58:19-59:11, 65:18-66:12.

As to Young Thug's portion of the Currency, several individuals, previously unknown to Shumake, showed up at the Ritz Carlton Hotel in Atlanta, where Coleman and Shumake were staying, and delivered Young Thug's share in bags of cash to Shumake or Coleman's hotel room. *Id.* at 60-65, 70-72. Although Shumake and Coleman were purportedly working at the behest of IHRC at the time, Shumake paid for his own high-end hotel room, and Coleman, who lived in the Atlanta area, booked a hotel room as well. *Id.* at 68-69, 71:9-22. As to Goldstein's portion of the Currency, Shumake does not recall when or where he obtained the Currency from Goldstein or how, exactly, Coleman combined the Goldstein contribution with Young Thug's contribution. *Id.* at 67:3-22, 71:3-8.

Significantly, around the time in 2016 when Shumake purportedly raised the cash "donations" from Young Thug and Goldstein for IHRC, Shumake was also engaged in (1) raising money through non-profit organizations for cannabis investments and (2) his cash-intensive recreational marijuana business in California with Goldstein (the same Goldstein who purportedly donated money to IHRC) and others operating under the name of "Louis Armstrong and Associates." *Id.* at 22:1-23; 24:1-28:23; 31:4-13; 36:7-39:22; 48:3-51:8; 65:21-23. Since the seizure, Atlanta-based attorney Nicole Birch, who is *also a purported ambassador for IHRC*, has also become involved in the cannabis business. *Id.* at 62:15-63:9; Ex.3, 50:15-25, 51:1-12. The connections among Atlanta, California, Goldstein, Birch, Shumake, IHRC, and the marijuana business are *simply undeniable*.

Further, Shumake's story that IHRC must operate in cash is implausible. There is no reason a legitimate NGO or charity would not be able to electronically move currency around the United States or the world. Indeed, IHRC's official website offers an electronic donation link on its home page. Rather, it is more likely than not—the summary judgment standard here—that Shumake

17

could not move money involved in his marijuana business in California electronically and was therefore paying Coleman to courier it, as he admits that the marijuana business is a cash only business because banks' compliance departments shut down their accounts (both Shumake's business specifically and in the industry generally). Ex.2, 37:9-38:4, 46:5-9.

Notably, Shumake knew that his cash-intensive marijuana business was an illegal controlled substances business under federal law.[8] Ex.2, 44:1-13, 46:1-9. And, Shumake couldn't even guess how much money he has earned in the past few years but knows that he owes hundreds of thousands of dollars in delinquent federal income taxes (which he wanted to pay via settlement in this case) resulting, in-part, from his operation of the marijuana business in California. *Id.* at 20-22.

These circumstances, wherein (1) a claimant is unable to provide information on apparent legitimate income; (2) the claimant also has a history of involvement in narcotics and raising and obtaining narcotics revenue; (3) the claimant provides an implausible story on the donors who provided the money; and (4) the entity that purportedly owns the Currency appears to be a front for an illegal business, are highly probative of a forfeiture nexus for purposes of summary judgment. *See e.g., United States v. $7,696,* 587 Fed. Appx. 352, 353 (8th Cir. 2014) (claimant "did not submit evidence materially refuting the government's case or proving his assertions that the money came from legitimate sources); *$147,900*, 450 Fed. Appx. at 264 (history of narcotics); *$30,670*, 403 F.3d at 465 (insufficient income); *$100,000*, 305 F. Supp. 3d at 249 ("record of drug activity"); *$200,000*, 210 F. Supp. 3d at 795 (noting importance of not allowing drug traffickers to shelter profits with uninvolved third parties); *United States v. 998 Cotton Street, Forsyth, NC*, 2013

---

[8] Shumake has been implicated as a defendant or witness (granted immunity) in numerous state and federal civil cases and criminal prosecutions, including cases involving criminal violations, allegations involving money tied to narcotics, and a federal public corruption prosecution of Kwame Kilpatrick, the former Mayor of Detroit, and others. *Id.* at 89:12-24; 91:1-5; 92-96; and 99:4-18

WL 1192821, at *14 (M.D.N.C. March 22, 2013) (discussing inability of claimants to provide tax documents on purportedly legitimate income); *$174,206*, 320 F.3d at 662 (legitimate income insufficient to explain large amount of currency). Based on this factor and the other factors cited above, this Court should find a nexus between the Currency and Title 21 for purposes of summary judgment.

### IV. *There is a nexus between the Currency and unlicensed money transmitting.*

Title 18, Sections 1960 and 981(a)(1)(A) also provide independent grounds for forfeiture. Section 1960 provides that it is a violation to conduct a business that transmits funds on behalf of the public (1) without an appropriate state license, (2) without appropriately registering with the federal Government, and/or (3) involving "the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity." 18 U.S.C. § 1960(a) and (b). Section 981(a)(1)(A) authorizes forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section . . . 1960 of this title, or any property traceable to such property."

Here, Claimants operated an unlicensed money service business in violation of Section 1960 and the Currency was substantially connected to that 1960 violation. Specifically, Coleman and Shumake told officers at the airport that Shumake had hired and paid Coleman to transport the Currency to San Francisco, that Coleman had transported currency on several occasions, and that they were not properly licensed as a money transmitting service. Doc. 1, ¶¶11, 13, 14, 15; *see also* Doc. 12, ¶15; Ex.16. Indeed, Shumake and IHRC (as used by Shumake) regularly employed and paid money couriers, including Coleman, Douglas Hampton, Daniel Flint, and others. Ex.2, 73:3-17, 80:5-81:15; Ex. 3, 58:16-60:2, 68:11-24, 71:5-72:23; *see also* Doc. 1, ¶26. Coleman was transporting money for hire unlicensed, Shumake was paying couriers to do so, and the Currency

was intended for unlawful activity—Shumake's marijuana business. These facts support a finding of a nexus between the Currency and a Section 1960 violation.

**V.      Neither Shumake nor IHRC can satisfy the innocent owner defense.**

For the reasons discussed in Sections I-IV above—*and even if Shumake has standing and this Court does not strike IHRC's claim as a fraud*—neither Shumake, who does not own the Currency, nor IHRC, whose appearance here is only in the capacity of a sham charity contrived by an admitted narcotics producer, can meet their burden of proving innocent ownership. *See, e.g., United States v. 8965 Arroyo Road*, 2016 WL 6023827 (D.N.M. Feb. 29, 2016) (conclusory statements with no corroborating evidence to rebut the Government's showing of a connection between the property and drugs or to establish that claimant is an innocent owner and not a nominee are insufficient to overcome summary judgment); *see also Beale*, 769 F.2d at 214; *Causey*, 162 F.3d at 802; *Gray*, 993 F.2d 1537, 1993 WL 165039 at *3.

WHEREFORE, for the reasons set forth herein, the Government respectfully requests that this Court grant summary judgment to the United States.

Respectfully submitted this 1st day of February, 2021.

> R. ANDREW MURRAY
> UNITED STATES ATTORNEY
>
> **s/ Benjamin Bain-Creed**
> Florida Bar # 21436
> **s/ J. Seth Johnson**
> North Carolina Bar # 53217
> Assistant United States Attorneys
> Suite 1650, Carillon Building
> 227 West Trade Street
> Charlotte, North Carolina 28202
> Telephone: (704) 344-6222
> Email: benjamin.bain-creed@usdoj.gov
> Email: seth.johnson@usdoj.gov